IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS J. RIDDLE, individually and** | : | |
| **on behalf of all others similarly situated,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BANK OF AMERICA** | : | |
| **CORPORATION, et al.,** | : | **No. 12-1740** |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**Schiller, J.**                                                                      **November 18, 2013**

Thomas Riddle and Marilyn Fischer, individually and on behalf of a putative class, claim that their mortgage lender, Bank of America ("BOA"), and private mortgage insurance companies were part of a scam involving kickbacks and unearned fees in violation of the Real Estate Settlement Procedures Act ("RESPA"). Defendants claim that Plaintiffs failed to bring their claims within RESPA's statute of limitations. Plaintiffs seek to invoke the doctrine of equitable tolling to save their claims. Previously, the Court denied Defendants' motion to dismiss and ordered the parties to conduct limited discovery on the statute of limitations and equitable tolling issues. That discovery is complete, and Defendants have moved for summary judgment. The Court grants Defendants' motions for summary judgment.

I.        **BACKGROUND**

A.        **Facts**

Bank of America Corporation ("BAC") is a large financial institution that owns BOA, which originated the home loans at issue. (Am. Compl. ¶¶ 28-29.) Bank of America Reinsurance

Corporation ("BOARC") is a captive reinsurer and a subsidiary of BAC. (*Id*. ¶ 30.) United Guaranty Residential Mortgage Insurance Company ("United") and Genworth Mortgage Insurance Corporation ("Genworth") are private mortgage insurers charged here with ceding premiums to BOARC and participating in the alleged kickback scheme. (Am. Compl. ¶¶ 31, 33.) Plaintiffs Riddle and Fischer bought their homes through mortgages with BOA and were required to purchase private mortgage insurance selected by the lender. (*Id*. ¶¶ 25-26.) Specifically, Riddle's private mortgage insurer was Genworth, and Fischer's private mortgage insurer was United. (*Id*.)

Home buyers who do not make a twenty percent down payment on their homes typically must buy private mortgage insurance. (*Id*. ¶¶ 8, 46.) This private mortgage insurance protects lenders if the borrower defaults. (*Id*.) The borrower typically pays for the private mortgage insurance, either through monthly premiums added to the mortgage payment or through a higher interest rate on the loan. (*Id*. ¶ 49.) The terms and conditions of private mortgage insurance are set by the lender and the provider of the insurance. (*Id*. ¶ 50.)

According to Plaintiffs, the lenders BAC and BOA, and their affiliated mortgage reinsurer, BOARC, colluded with various private mortgage insurers such as Genworth and United to evade federal laws that prohibit lenders from accepting kickbacks or referral fees from any person providing a real estate settlement service or accepting any portion of a settlement service fee, other than for services actually performed. (*Id*. ¶¶ 9-10.) In particular, Plaintiffs claims that BOA referred its borrowers to private mortgage insurers, such as United and Genworth, who agreed to reinsure with the lender's captive insurer, BOARC. (*Id*. ¶ 75.) In return, United and Genworth ceded a percentage of the borrower's premiums to the lender's captive reinsurer to ensure a steady stream of business. (*Id*.) These contracts were structured so that the reinsurer received hundreds of millions

of dollars in premiums but assumed little or no actual risk. (*Id*. ¶ 77.) The premiums were placed into a trust but the agreements "limit the lenders' liability/payment responsibilities . . . through provisions that permit the captive reinsurer to effectively opt out of the contracts at will by simply failing to adequately capitalize the trust supporting the reinsurance contract." (*Id*. ¶ 81.) Furthermore, once the trust was depleted, the private mortgage insurers assumed any remaining obligations and the captive reinsurer was off the hook. (*See id*. ¶ 124.)

According to Plaintiffs, the scheme violated RESPA, which prohibits giving or accepting "any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person" or accepting "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(a)-(b). Meanwhile, Plaintiffs contend that they and other borrowers overpaid for mortgage insurance because the price included the kickbacks to lenders. (*Id*. ¶¶ 111, 147 ("These arrangements tend to keep premiums for private mortgage insurance artificially inflated over time because a percentage of borrowers' premiums are not actually being paid to cover actual risk, but are simply funding illegal kickbacks to lenders.").) Furthermore, the scheme perpetrated by Defendants failed to constitute a real, risk-transferring reinsurance agreement between BOARC and the private mortgage insurers. (*Id*. ¶¶ 125, 131.)

### B.    Individual Claims and Reasonable Diligence

The Court refused to dismiss Plaintiffs claims as time-barred without any discovery on the statute of limitations issue. With that tailored discovery completed, the Court will set forth the facts

3

uncovered.

            *1.    Riddle*

Before closing on his loan in January of 2005, Riddle could not recall discussing mortgage insurance with anyone other than his lender, BOA. (Mot. of Defs. BAC, BOA, and BOARC for Summ. J. [BOA Defs. Summ. J. Mot.] Ex. 1 [Riddle Dep.] at 74.) He believed that he reviewed all of his loan documents. (*Id*. at 127.) He acknowledged receiving a document that informed him that his loan required private mortgage insurance. (*Id*. at 127-28.) According to closing documents signed by Riddle, he understood that his loan required private mortgage insurance. (*Id*. at 160-61.) It was further explained that "your lender or a subsequent owner of your loan may, directly or through an affiliated company, the reinsurance company, enter into a reinsurance or other risk-sharing agreement with the insurance company that will be providing mortgage insurance covering your loan." (*Id*. at 162.) Riddle was permitted to opt-out his loan from being reinsured, though he never took the required steps to do so. (*Id*. at 163-66.) He was also aware that BOARC might reinsure his loan and that General Electric Insurance Company was his mortgage insurer.[1] (Riddle Dep. at 166-67.)

Riddle never tried to contact Genworth about his mortgage insurance. (*Id*. at 168.) When he inquired about his mortgage insurance, he contacted BOA about the matter. (*Id*. at 192-93.) He made these calls to BOA about his private mortgage insurance, with the first call made sometime around 2008. (*Id*. at 196.) He did not ask questions about mortgage reinsurance during any of these calls. (*Id*. at 199-200.) Around May of 2012, he called BOA in an effort to opt out of the reinsurance

---

[1] General Electric Insurance Company is the former business name of Genworth. (Decl. of Steve Hitchings ¶ 2, attached to Genworth's Mot. for Summ. J.)

program because "after conferring with [his] attorneys, [Riddle] felt like [he] wanted to opt out of the reinsurance program." (*Id*. at 200-02.)

Although Riddle believed that the loan documents he received contained affirmative acts of non-disclosure, Genworth did not give him the loan documents. (*Id*. at 278.) Indeed, he could not recall getting any documents at any point from Genworth or contacting Genworth. (*Id*. at 278-79; Genworth's Mot. for Summ. J. Ex. B [Pl. Riddle's Resps. to Genworth's First Set of Interrogs.] at 11.) Riddle claims that he made an effort to discover his claims during a November 22, 2004 meeting with a BOA employee; on January 3, 2005, the date of his closing; late January or early February 2012; and March 28, 2012. (Pl. Riddle's Resps. to Genworth's First Set of Interrogs. at 6.)

According to Plaintiffs, Defendants' misrepresentations about the legitimacy of their captive reinsurance arrangements appeared in various standardized mortgage and closing documents when Riddle received the "Affiliated Business Arrangement Disclosure Statement" and at Riddle's closing on January 3, 2005. (*Id*. at 8-9.) The dates of concealment were November 22, 2004; January 3, 2005; and March 28, 2012. (*Id*. at 9-10.)

       2.    *Fischer*

Fischer owns a home in Erie, Pennsylvania. (BOA Defs.' Summ. J. Mot. Ex. 2 [Fischer Dep.] at 10.) She purchased the home and closed on the loan in April of 2005. (*Id*. at 43, 121.) BOA was her lender, though Fischer dealt with a representative at Select Mortgage. (*Id*. at 25, 47-48, 62, 69.) She ultimately received a loan from BOA in the amount of $103,455.00 at an interest rate of 6%. (*Id*. at 103, 117.) She said that she had never heard of captive reinsurance prior to speaking to her attorneys in 2012. (*Id*. at 23-24.) At the time she discussed home financing, however, she knew that she would have to pay for mortgage insurance. (*Id*. at 54-55.)

Fischer attended her loan closing on April 19, 2005. (*Id*. at 108.) According to her loan documents, her monthly mortgage insurance payment was $67.25. (*Id*. at 119-20, 124-26.) One of the documents that Fischer might have reviewed during the closing was a "Federal Private Mortgage Insurance Disclosure," which informed Fischer that her loan required private mortgage insurance. (*Id*. at 130-32.) In May of 2012, she reviewed a "Risk Sharing Mortgage Insurance Disclosure" in an effort to learn who was responsible for her private mortgage insurance. (*Id*. at 133-34.) That document informed her that her loan required private mortgage insurance and that "[y]our lender or a subsequent owner of your loan may, directly or through an affiliated company, the reinsurance company, enter into a reinsurance or other risk sharing agreement with the insurance company that will be providing mortgage insurance covering your loan." (*Id*. at 136-137.) The document also informed Fischer that she could opt her loan out of the reinsurance program. (*Id*. at 137-39.)

At the time of her closing, Fischer knew that her mortgage insurer was United. (*Id*. at 141, 222.) Prior to the end of May or early June of 2012, she had no contact with United, nor did she try to contact BOARC. (*Id*. at 144-45, 222.) In June of 2012, Fischer called BOA to inquire if her mortgage insurance was part of a reinsurance program (*Id*. at 162-63.) She also wanted to know the name of her mortgage insurance company. (*Id*. at 165.) The BOA representatives "had no idea what [she] was talking about." (*Id*. at 166.) When she called BOA a week later seeking the same information, the BOA representative with whom she spoke still could not answer her questions about her private mortgage insurance. (*Id*. at 167.) Sometime prior to that, Fischer had also called BOA to ask for information about removing her private mortgage insurance. (*Id*. at 155-56.) She also called United on June 6, 2012, to ask if her  mortgage insurance "was part of the reinsurance." (*Id*. at 213; *see also id*. at 222.) The United representative "had no idea what [she] was talking about."

(*Id*. at 213; *see also id*. at 226.) Fischer claims that the inability to provide this information to her in 2012 is the basis for her assertion that Defendants engaged in affirmative acts of concealment that should allow her to equitably toll the statute of limitations. (*See id*. 174-75.) During her deposition, the following exchange occurred:

> Q:    And it's correct that from the date of your closing until the date you conferred
>        with your attorneys in this matter you don't think anyone at Bank of America
>        told you anything false regarding your claims in this matter?
>
> A:    I don't think they told me anything false. I just think they omitted some
>        things.

(*Id*. at 193-94.)

Fischer makes no claim that United made any misrepresentations to her. (*Id*. at 195.) Nor did she believe anybody that anybody prevented her from investigating her claims. (*Id*.) From the date of her closing until 2012, she conducted no investigation into mortgage insurance or captive reinsurance arrangements. (*Id*. at 196-97.)

## II.    STANDARDS OF REVIEW

### A.    Summary Judgment

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 32 F.3d 768, 777 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

B.    **RESPA Statute of Limitations and Equitable Tolling**

Plaintiffs' RESPA claims have a one-year statute of limitations. *See* 12 U.S.C. § 2614. The RESPA statute of limitations runs "from the date of the occurrence of the violation," which commences upon the closing of the loan. *See Marple v. Countrywide Fin. Corp.*, Civ. A. No. 07-4402, 2008 U.S. Dist. LEXIS 37705, at *6 (D.N.J. May 7, 2008); *Smith v. EquiCredit Corp.*, Civ. A. No. 01-4326, 2002 WL 32349873, at *3 (E.D. Pa. Oct. 4, 2002).

Plaintiffs commenced this litigation well after RESPA's one-year statute of limitations had expired. However, they argue that they are entitled to proceed with their claims based on the doctrine of equitable tolling. Equitable tolling stops the statute of limitations from running although the claim's accrual date, the date on which the statute of limitations begins to run, has already passed. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994); *see also Forbes v. Eagleson*, 228 F.3d 471, 486 (3d Cir. 2000) (noting that doctrine of equitable tolling presumes claim has already accrued). Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990).

8

Equitable tolling is appropriate if: (1) the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. *Oshiver*, 38 F.3d at 1387. The burden of demonstrating that equitable tolling is appropriate lies with the party seeking to assert it. *See Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006). In RESPA cases, silence is insufficient to toll the statute of limitations; the defendant must have performed an independent act of concealment upon which the plaintiff justifiably relied. *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 516 (E.D. Pa. 2009).

Plaintiffs argue that Defendants actively misled them regarding the nature and existence of their claims; essentially that Defendants fraudulently concealed the nature and existence of Plaintiffs claims. For a statute of limitations to be tolled due to a defendant's fraudulent concealment, the plaintiff must show that: (1) the defendant actively misled the plaintiff respecting the plaintiff's claim; (2) the defendant prevented the plaintiff from recognizing the validity of the claim within the limitations period; and (3) the plaintiff used reasonable diligence in uncovering the relevant facts that form the basis of a claim. *See Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006); *Poskin v. TD Banknorth, N.A.*, 687 F. Supp. 2d 530, 551 (W.D. Pa. 2009).

Generally, when a plaintiff seeks to invoke the doctrine of equitable tolling, and defendants seek summary judgment on the issue, a court must determine: (1) whether there is sufficient evidence to support a finding that defendants engaged in affirmative acts of concealment designed to mislead the plaintiffs regarding facts supporting their claim; (2) whether there is sufficient evidence to support a finding that plaintiffs exercised reasonable diligence; and (3) whether there is sufficient

evidence to support a finding that plaintiffs were not aware, nor should they have been aware, of the facts supporting their claim until a time within the limitations period measured backwards from when the plaintiffs filed their complaint. Absent evidence to support these findings there is no genuine dispute of material fact on the issue and the defendants are entitled to summary judgment. *Forbes*, 228 F.3d at 487.

## III.   DISCUSSION

### A.   Diligence

Regardless of the basis for Plaintiffs' plea for equitable tolling, "a plaintiff will not receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim." *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009); *see also Oshiver*, 38 F.3d at 1390 (noting that equitable tolling "requires a level of diligence on the part of the plaintiff; that is, [it] requires the plaintiff to take reasonable measures to uncover the existence of injury). Reasonable diligence means that a plaintiff pursued the cause of his injury "with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir. 2006). The Court has afforded Plaintiffs ample opportunity to make their case for equitable tolling. The record is now clear that Plaintiffs did not diligently pursue their claims. Rather, they elected to pursue litigation after they were pursued by lawyers who believed that they may have claims.

Assuming that Defendants actively misled Plaintiffs into thinking that they possessed no cause of action, Plaintiffs would be entitled to equitable tolling until such time as a reasonably

prudent person would be expected to uncover the concealed facts supporting their claims. *See Forbes*, 228 F.3d at 487. Plaintiffs, however, must support their position with evidence sufficient to find that they were reasonably diligent. *Id.*

According to Riddle, he first uncovered the possible existence of his claim on February 14, 2012, "through conferring with [his] attorneys." (Riddle Dep. at 245-46; Pl. Riddle's Resps. to Genworth's First Set of Interrogs. at 5.) Riddle cites four dates on which he "made any effort to discover [his] claims for purposes of the statute of limitations." (Pl. Riddle's Resps. to Genworth's First Set of Interrogs. at 6.) Two dates occurred in 2012, well after the statute of limitations expired. One date, January 3, 2005, was the date of Riddle's closing, and the other was November 22, 2004, when Riddle received a document that he claims failed to accurately describe the captive reinsurance scheme perpetrated by Defendants. Riddle made no inquiry upon receiving this document in 2004, and only proceeded with this litigation when contacted by a lawyer over seven years later. Riddle conceded that he did not "do anything" between the date of his closing on January 3, 2005, and the date he met with his attorneys to attempt to discover his claims. (Riddle Dep. at 254.)

Fischer likewise admitted that between the date of her closing and the date she conferred with her attorneys, she did not take any actions to investigate her claims. (Fischer Dep. at 193-94.) Fischer relies on her 2012 investigation in support of her argument for equitable tolling. However, similar to Riddle, from the time of her closing in April of 2005 until 2012, Fischer made no investigation into her claims.

The few phone calls made by Plaintiffs following the advice of counsel is insufficient to invoke the doctrine of equitable tolling. *See Cetel*, 460 F.3d at 508 ("[P]laintiffs who undertake no diligence beyond superficial inquiry of defendants . . . cannot obtain the benefit that a finding of

reasonable diligence will confer."). More problematic for Plaintiffs, these 2012 inquires occurred

well after the statute of limitations had run. If a plaintiff could revive his or her claim by being

diligent after the statute of limitations had run, the statute of limitations would be meaningless. *See*

*White v. PNC Fin. Servs. Grp., Inc.*, Civ. A. No. 11-7928, 2013 WL 3090823, at *7 (E.D. Pa. June

20, 2013) ("Plaintiffs were required to be diligent throughout the time period in which they claim

the statute of limitations should be tolled. Their duty to diligently pursue their rights did not end at

the closing of their loans.").

       As for Plaintiffs' diligence by participating in their closings, this Court concluded that

allegations that a plaintiff participated in his or her closing sufficed to defeat a motion to dismiss.

But at this point, Plaintiffs needs evidence. Mere presence at a closing, without any additional

followup to discover or pursue potential claims is not enough to defeat a summary judgment motion.

Again, the closings occurred approximately seven years prior to the filing of this action. This Court

cannot point to any evidence that shows Plaintiffs did anything other than appear at their closings.

       Plaintiffs attempt to excuse their lack of diligence by arguing that, prior to lawyerly

intervention, they had no reason to suspect that they were victims of Defendants' scheme. (Pls.'

Consolidated Mem. of Law in Opp'n to Defs.' Mots. for Summ. J. Regarding Statute of Limitations

Defense [Pls.' Mem.] at 30-38.) This argument is appealing because it is reasonable to ask, "what

could Plaintiffs reasonably be expected to do if Defendants defrauded them?" But equitable tolling

is "an extraordinary remedy which should be extended only sparingly." *Hedges v. United States*, 404

F.3d 744, 751 (3d Cir. 2005). Ultimately, Plaintiffs' argument fails because it renders the statute of

limitations a nullity. Plaintiffs' theory would provide them with an unlimited time to resuscitate stale

claims and would leave the Court with no way to determine when the clock begins to run on their

claims. Under Plaintiffs' theory, when would the statute of limitations run? One year after Plaintiffs received their first solicitation letter? One year after Plaintiffs first met with lawyers to discuss their claims? Is there a point in time in which Plaintiffs had to seek the advice of counsel, rather than having counsel approach them? The record is devoid of evidence suggesting Plaintiffs were unable to discuss these issues with counsel prior to closing, during closing, or after closing.

Furthermore, Plaintiffs' contention that they could not discover their claims is undercut by a number of facts. First, there are a number of cases alleging identical schemes that were filed as early as 2006. (Mem. of Law in Supp. of BOA Defs. Summ. J. Mot. at 19 n.13; Am. Compl. ¶¶ 91 n.8, 102.) Similarly, Plaintiffs' First Amended Class Action Complaint is rife with allegations that the United States Department of Housing and Urban Development expressed concern about captive reinsurance arrangements years prior to the closings here. (Am. Compl. ¶¶ 94-98.) For example, Plaintiffs claim that "[c]oncerned that captive reinsurance arrangements would be designed to disguise a funneling of referral fees back to the lender who arranged for the private mortgage insurer to obtain the business, HUD issued a letter dated August 6, 1997 ("HUD letter") addressing the problem of captive reinsurers and RESPA's anti-kickback violations." (*Id*. ¶ 94.) Plaintiffs further allege that captive reinsurance agreements continued "through 2008 in the midst of the unprecedented mortgage crisis" and that the "brakes were only applied to this ongoing scheme after Freddie Mac's announcement that effective June 1, 2008, it would limit the percentage of premiums a mortgage insurance provider could cede to a captive reinsurer by 25%." (*Id*. ¶¶ 108-09.) Plaintiffs also allege that Defendants disclosed in publicly available information that these arrangements became the focus of governmental inquiries, in some cases years before Plaintiffs filed this lawsuit. (*Id*. ¶ 110.)

13

**B.      Misrepresentations**

Plaintiffs' lack of diligence is sufficient for this Court to deny Plaintiffs' request for equitable tolling. Additionally, however, Plaintiffs have failed to create a genuine issue of material fact as to whether Defendants actively misled them because Genworth and United had no contact with Plaintiffs, and their argument against the BOA Defendants relies on the silence of the BOA Defendants.

*1.      Genworth and United*

Genworth and United argue that they did not actively mislead or make any fraudulent misrepresentations to Riddle or Fischer. (Genworth Mem. in Supp. of Mot. for Summ. J. [Genworth Mem.] at 5-9; United Guaranty's Mem. of Law in Supp. of Mot. for Summ. J. [United Mem.] at 7-15.) The Court agrees. The record is devoid of evidence that Genworth or United did anything to mislead Riddle or Fischer. Indeed, the record lacks evidence that Genworth and United had any contact with Plaintiffs. In the absence of a duty to speak, silence is insufficient to toll the statute of limitations in RESPA cases; the defendant must have performed an independent act of concealment upon which the plaintiff justifiably relied. *Garczynski*, 656 F. Supp. 2d at 516. Because Genworth did not communicate with Riddle and had no duty to do so, Riddle cannot demonstrate that Genworth actively misled him. *See Mest*, 449 F.3d at 517 ("Silence can constitute fraud only where there is an affirmative duty to disclose because of a fiduciary relationship between the parties or a similar relationship of trust and confidence.").

Similarly, United states "Fischer has failed to come forth with evidence sufficient to create a genuine issue of material fact as to whether [United] 'actively misled' her 'respecting her claim.'" (United Mem. at 7.) Again, the Court agrees. From the date of her closing until June of 2012, Fischer

had no contact with United let alone any communication that can be labeled a fraudulent communication.

Additionally, Plaintiffs cannot bootstrap their argument in support of equitable tolling against all Defendants based on communications from BOA. Rather, if they seek to toll the statute of limitations against a particular Defendant, they must put forward an affirmative act of concealment by that Defendant. *See White*, 2013 WL 3090823, at *2, *5; *see also In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 315 (D.N.J. 2004) ("To establish [equitable] tolling, the plaintiff must show: 1. an affirmative act of concealment by each defendant."). "[T]he plaintiff must show that alleged fraud or concealment is chargeable against each defendant whom the plaintiff argues should be estopped from asserting the statute of limitations." *Stroud v. Abington Mem. Hosp.*, Civ. A. No. 06-4840, 2008 WL 2061408, at *12 (E.D. Pa. May 13, 2008). There is no basis upon which this Court can impute any concealment on the part BOA to Genworth or United.

### 2.   BOA Defendants

Plaintiffs claim that "[s]eparate and apart from Defendants' receipt of kickback payments for sham reinsurance that violated RESPA, Defendants also took affirmative steps to conceal their unlawful acts from Plaintiffs, which prevented Plaintiffs from discovering Defendants' RESPA violations prior to obtaining the assistance of counsel." (Pls.' Mem. at 9.) To support this claim, they rely on the allegations in their First Amended Complaint. Plaintiffs argue that the language in their disclosures misleadingly represented the nature of the reinsurance agreement. (*Id*. at 10.) As noted previously, however, neither Plaintiff here can point to any action taken by any Defendant following Plaintiffs closing that suggests Defendant actively misled Plaintiffs about the facts underlying their claims.

15

Plaintiffs' argument—that the statute of limitations should be equitably tolled because Defendants failed to disclose that they were violating RESPA—is unpersuasive. Plaintiffs' logic is circular and would eviscerate the statute of limitations, allowing Plaintiffs to pay off their loans yet still bring claims years later upon the receipt of a solicitation letter from an attorney. As made clear by the deposition testimony in this case, the documents upon which Plaintiffs rely to argue for equitable tolling serve as the basis for their RESPA claim. Fischer testified that from the date of her closing until the time that she met with her attorney, she did not believe that BOA provided her with a document that contained a misrepresentation. (Fischer Dep. at 194-95.) Thus, Plaintiffs cannot point to actions taken by Defendants that actively misled them about the nature of their claims.

Furthermore, Plaintiffs are attempting to frame their argument as an affirmative statement, contending that Defendants' "bold-type assurances that the reinsurance arrangements were legitimate and would have no impact upon the cost of mortgage insurance premiums." (Pls.' Mem. at 34.) But these assurances are the very basis for their RESPA claim. Plaintiffs are trying to turn Defendants' failure to inform them that they were running a scheme in violation of RESPA into an affirmative act of concealment. This is unsurprising because silence is insufficient to toll the statute of limitations in RESPA cases; the defendant must have performed an independent act of concealment upon which the plaintiff justifiably relied. *See Garczynski*, 656 F. Supp. 2d at 516. But silence is exactly what Plaintiffs are relying on; Defendants purportedly did not tell Plaintiffs that they were engaged in conduct that violated federal law.

Finally, Plaintiffs also raise a new argument in support of their attempt to equitably toll the statute of limitations. According to Plaintiffs, Defendants submitted false documentation to Fannie Mae in their efforts to gain approval as qualified mortgage insurers. (Pls.' Mem. at 16-18.) This new

16

theory, which appeared nowhere in Plaintiffs' original allegations, is a red herring that does not alter the Court's analysis. Equitable tolling focuses on the actions of the defendant that would prevent the plaintiff from bringing his or her claim. Plaintiffs here are trying to rely on purported misrepresentations made to entities not part of this litigation as the basis for tolling the statute of limitations. But Plaintiffs have failed to explain how misstatements made to Fannie Mae, of which Plaintiffs had no knowledge, could be deemed to have actively misled Plaintiffs about their cause of action.

## IV.   CONCLUSION

The clock has run on Plaintiffs' RESPA claims[2] and despite ample opportunity, they are unable to create a triable fact that they are entitled to equitable tolling.[3] Therefore, the Court must grant Defendants' motions and dismiss this case. An Order consistent with this Memorandum will be docketed separately.

---

[2] BOA Defendants also seek summary judgment on Plaintiffs' unjust enrichment claim as barred by the statute of limitations. Plaintiffs do not respond to this argument, which also appears to have expired. *See Sevast v. Kakouras*, 915 A.2d 1147, 1153 (Pa. 2007) (noting that Pennsylvania's statute of limitations for unjust enrichment claims is four years).

[3] The Court's ruling, compelled by the law based on the record before the Court, does not address the underlying conduct with which Defendants are charged. If Plaintiffs' allegations are true, that conduct may violate RESPA and perhaps can be investigated by appropriate government authorities, which up until today, seem very disinterested in this case. This Court, however, cannot ignore the statute of limitations.